Eastern District of Kentucky
**FILED**
OCT 08 2021
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA

V.                                                          INDICTMENT NO. 5:21-CR-110-KKC

DOUGLAS HAWKINS

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1.    At all relevant times DOUGLAS HAWKINS was an attorney, an Investor Advisor Representative, and a Certified Financial Planner in Lexington, Kentucky, and the owner/operator of Douglas Hawkins Investment, LLC, which later became Rite Financial Group. Douglas Hawkins and his associates, from time to time, held themselves out to be associated with Accelerated Wealth LLC (hereinafter Accelerated Wealth). As an Investment Advisor Representative and a Certified Financial Planner, DOUGLAS HAWKINS owed his clients a fiduciary duty to further the client's financial best interest. DOUGLAS HAWKINS, for a fee, and as the central aspect of his business, provided his clients advice regarding financial investments, including securities, and, as such, he was an "investment advisor" within the purview of 15 U.S.C. §§ 80b-6 and 80b-17.

2.    In or about May 2013, DOUGLAS HAWKINS began an association with two companies in Oregon, True Wholesale Houses and Portland Funding, LLC

(collectively, TWH), that purported to offer to investors the purchase of notes secured by real estate deeds of trust. The TWH business model contemplated that the specific pieces of residential real estate, securing the respective notes, would provide rental income to pay interest on the note. The deed of trust would secure repayment of the note in the event of default. At the end of a designated term the principal amount of the note would be due and payable unless the client desired to extend the term of the note. The properties securing the notes were in several states with each state's real estate being managed by a separate subsidiary of TWH. The financial arrangement described above, involving promissory notes secured by deeds of trust, and contemplating the efforts by third parties to manage the properties, constituted a security, within the purview of state and federal securities laws.

3. In or around mid-2013, DOUGLAS HAWKINS began to offer the purchase of these notes to his clients as a way to diversify their portfolios. DOUGLAS HAWKINS was paid a commission by TWH for selling these notes.

4. In or around mid to late 2015, TWH began experiencing financial difficulties and began to default on the interest payments to the note purchasers. The properties in the above-described business plan were not properly managed, houses were not renovated as promised, and many houses were dilapidated and vacant. Ultimately on August 17, 2016, TWH filed for bankruptcy and went defunct.

5. In April 2016, DOUGLAS HAWKINS established a company, RPB Rentals MS, LLC (RPB), for the purpose of taking ownership of many of the TWH houses and seeking to manage them and service the notes. In addition, DOUGLAS

HAWKINS used RPB to purchase additional houses and borrowed money from new investors and secured the notes with deeds of trust. In essence, RPB continued the same failed business model of TWH. The business model fared little better under RPB and income from the houses did not cover interest on the notes. As a consequence, many of the investors suffered significant losses of potential income and principal.

6. When presenting the above investment product to clients of Douglas Hawkins Investment, LLC and Rite Financial, DOUGLAS HAWKINS made many material misrepresentations that were intended to induce them to invest by assuring them that there was little risk of financial loss. This included, among others:

*Material misrepresentations*

a. Though the actual paperwork described a note and mortgage, by his statements and representations, DOUGLAS HAWKINS and his associates led many clients to believe they were purchasing an ownership interest in a particular piece of real estate.

b. In numerous instances, DOUGLAS HAWKINS convinced investors that the piece of property that securing their mortgage was rented, when in fact, it was not, and he continued to make such false representations about the properties being rented.

c. In numerous instances, DOUGLAS HAWKINS convinced investors that the piece of property that securing their mortgage was in good condition, when in fact, it needed substantial repair and renovation.

d. In numerous instances, DOUGLAS HAWKINS convinced investors

that the property was being capably managed by third parties, when he knew it was not.

e.  In several instances, DOUGLAS HAWKINS told investors that the property taxes were current on the property securing their note, when in fact, they were not paid and, in some instances, tax liens were places on the properties.

f.  In most instances, DOUGLAS HAWKINS led clients to believe that their money was dedicated and designated for the purchase or renovation of a particular piece of real estate, when in fact, that money was commingled with other investors' money and used wherever DOUGLAS HAWKINS needed it.

g.  In at least one instance, DOUGLAS HAWKINS told an investor that the U.S. Army guaranteed that the house securing their note would always be rented.

h.  DOUGLAS HAWKINS and his associates told clients that Douglas Hawkins Investment, LLC was backed by a federally covered financial advisor, Accelerated Wealth, that would make the investment good if anything went wrong, when in fact, there was no such obligation or intent by Accelerated Wealth to secure the investment.

i.  In most instances, DOUGLAS HAWKINS, lead investors to believe that the money they invested was substantially less than the value of the property, and thus provided them with total security, when, in fact the value of the property was far less than the loan.

j.  In many instances, DOUGLAS HAWKINS materially misrepresented the purchase price of the property securing the client's note, in that it was purchased for significantly less than represented.

7. It was part of the scheme to defraud that DOUGLAS HAWKINS failed to disclose numerous facts to his investors that he had a fiduciary duty to disclose, including, among others:

*Material omissions*

a. That he was receiving a commission from TWH.

b. That as the principal in RPB he had a conflict of interest with the lender/purchaser of notes from RPB.

c. That he intended to apply his investors funds to other investor properties and other expenses.

d. That he intended to spend investor money on personal items and gifts for others.

e. That properties that purported to secure repayment of loans by investors were distressed and in disrepair.

f. That the property behind the note and mortgage had been previously invested in by other clients of DOUGLAS HAWKINS and had failed as an investment.

g. That property taxes were delinquent on the property securing the note.

h. That the amount being invested was significantly more than the value of the property securing it.

i. That the investment model he was promoting and that he assumed from a previous company had failed and that that company had declared bankruptcy.

## COUNT 1
## 15 U.S.C §§ 80b-6 and 80b-17

8. The allegations contained in paragraphs 1 through 7 of the Indictment are restated and incorporated herein by reference.

9. From on or about mid-2013 until on or about the end of 2018, in Fayette County and other places in the Eastern District of Kentucky, and elsewhere,

**DOUGLAS HAWKINS,**

acting as an investment advisor with respect to clients of his firms, unlawfully, willfully, and knowingly, and by the use of the mails and means and instrumentalities of interstate commerce, directly and indirectly, did (a) employ devices, schemes and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and prospective clients; and (c) engage in acts, practices and courses of business that were fraudulent, deceptive and manipulative, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

## COUNT 2
## 15 U.S.C. §§ 78j(b) and 78ff,
## 17 C.F.R. 240.10b-5

10. The allegations contained in paragraphs 1 through 7 of the Indictment are restated and incorporated herein by reference.

11. From on or about a date in mid-2013 until on or about a date in late 2018, in Fayette County and other places in the Eastern District of Kentucky, and elsewhere,

**DOUGLAS HAWKINS**

and others known and unknown to the Grand Jury, unlawfully, willfully and

knowingly, by use of means of instrumentalities of interstate commerce and the mails, directly and indirectly did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security, in contravention of Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading, and (c) engage in acts, practices and a course of business which would, and did, operate as a fraud and deceit upon investors in programs promoted by Douglas Hawkins Investment, LLC and Rite Financial, in connection with the purchase and sale of a security, all in violation of Title 15, United States Code, Sections 78j(b), 78ff, and 17 C.F.R. 240.10b-5.

### COUNTS 3-4
### 18 U.S.C. § 1341

12. The allegation set forth in paragraphs 1 through 7 of the Indictment are restated and incorporated herein by reference.

13. From on or about a date in 2013, and continuing through in or about a date in 2021, in Fayette County and other places in the Eastern District of Kentucky, and elsewhere,

**DOUGLAS HAWKINS**

and others known and unknown to the Grand Jury, devised and intended to devise a

scheme and artifice to defraud and to obtain money from persons by false and fraudulent pretenses and representations, as set forth above.

For the purpose of executing the scheme to defraud, the defendant, on or about the respective dates below, placed in the United States mail or with a commercial interstate carrier at Lexington, Kentucky, and caused to be delivered by United States mail or by a commercial interstate carrier, according to the directions thereon, mail matter as described and as addressed below:

| COUNT | DATE | DESCRIPTION | ADDRESS |
|---|---|---|---|
| 3 | July 31, 2018 | Letter from RPB to RPB note holders regarding intent to transfer properties to an experienced management team. | From:<br>RPB Rentals, MS<br>1795 Alysheba Way<br>Ste. 3106<br>Lexington, Ky. |
| 4 | October 11, 2019 | Letter from RPB to RPB note holders regarding intent to sell properties individually | From:<br>RPB Rentals, MS<br>1795 Alysheba Way<br>Ste. 3106<br>Lexington, Ky. |

Each in violation of Title 18, United States Code, Section 1341.

## FORFEITURE ALLEGATION
## 18 U.S.C. § 981(a)(1)(C)
## 28 U.S.C. § 2461(c)

1. The allegations contained in paragraphs 1 through 14 of this Indictment are hereby realleged and incorporated by reference for the purpose of proposing the forfeiture allegations pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses in Counts 3-4 of this Indictment, **DOUGLAS HAWKINS**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

**MONEY JUDGMENT:**

A sum equal to the amount of gross proceeds **DOUGLAS HAWKINS** obtained as a result of the violations alleged in this Indictment.

3. If any of the property described above, as a result of any act or omission of the Defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

███████████

FOREPERSON

_____
**CARLTON S. SHIER, IV**
**ACTING UNITED STATES ATTORNEY**

## PENALTIES

**COUNT 1:** Not more than 5 years imprisonment, a $250,000 fine or twice the gross gain or loss, whichever is greater, and 3 years supervised release.

**COUNT 2:** Not more than 20 years imprisonment, a $5,000,000 fine, and 3 years supervised release.

**COUNTS 3-4:** Not more than 20 years imprisonment, a $250,000 fine or twice the gross gain or loss, whichever is greater, and 3 years supervised release.

**PLUS:** Forfeiture, as alleged.

**PLUS:** Restitution, as applicable.

**PLUS:** Mandatory special assessment of $100 per count.